297 S.E.2d 889

**Joseph S. SERIAN, Doctor of Optometry**

v.

**STATE of West Virginia, Acting By and Through The WEST VIRGINIA BOARD OF OPTOMETRY.**

**No. 15114.**

Supreme Court of Appeals of West Virginia.

Nov. 19, 1982.

Edgar F. Heiskell, III, Morgantown, for appellant.

Henry C. Bias, Jr., Deputy Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

This action is before this Court upon the petition of Joseph S. Serian, Doctor of Optometry, for an appeal from the final order of the Circuit Court of Marion County, West Virginia. That order, entered on April 11, 1980, affirmed the June 29, 1979, ruling of the West Virginia Board of Optometry revoking the appellant's license to practice optometry in West Virginia. The principal charge against the appellant was that he permitted his employee, Charles W. North, to practice optometry in the appellant's office without a license. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

The appellant, Joseph S. Serian, was an optometrist licensed to practice optometry in Missouri, Ohio and West Virginia. During the period in question, he operated an office at the Middletown Mall in Fairmont, West Virginia. Employed at that office were two other optometrists: Dr. Matt Zubak and Dr. George Joseph.

In May, 1978, the appellant hired Charles W. North. North was employed at the Middletown Mall office as a technician. He was not an optometrist.

By notice dated July 31, 1978, the West Virginia Board of Optometry informed the appellant that a hearing would be conducted by the board to consider whether, because of the alleged practice of optometry by Charles W. North, the appellant's license to practice optometry in West Virginia should be suspended or revoked. Attached to that notice was the written complaint of optometrist Claud A. Kendall, "Chairman of the Committee to Investigate Optometric Violations."

The appellant sought to preclude a hearing by the board by filing a petition for a writ of prohibition in the Circuit Court of Kanawha County, West Virginia. On December 28, 1978, a hearing was held upon the petition in that court. Although no

final order appears in the record before this Court concerning that action, the record indicates that the parties agreed, *inter alia*, that the petition for a writ of prohibition would be dismissed.

By notice dated January 2, 1979, the board again notified the appellant that a hearing would be conducted by the board to consider the alleged practice of optometry by Charles W. North. That notice asserted that North practiced optometry at the appellant's Fairmont office with the appellant's knowledge and consent. As that notice stated: "Among those who have complained against your activities in this regard are Lois Snyder, Tobey Allen, Jerry Lowther and Claud Kendall, O.D." That notice further asserted that the appellant had engaged in false and deceptive advertising and that the appellant had obtained "money as well as other valuable goods and services" by way of fraudulent misrepresentations.

The hearing before the board began on February 6, 1979. Various witnesses called by the State, including patients Lois Snyder, Tobey Allen and Jerry Lowther, testified that North examined their eyes and that they suffered eye problems from contact lens prescriptions they received at the appellant's office after those examinations. Furthermore, Tobey Allen and Jerry Lowther, among other witnesses, testified that North was referred to as "Dr. North" at the appellant's office. The appellant's evidence, on the other hand, indicated that North worked at the office as a technician only and was not authorized to fully attend to patients or write prescriptions for them.

In its ruling of June 29, 1979, the board stated that with respect to the evidence submitted by the State it would only consider the testimony of the following witnesses: Jerry Lowther, Lois Snyder, Gregory Phillips, Mary Frances Poling, Tobey Allen and Claud Kendall, O.D. Pursuant to that ruling, the board revoked the appellant's license to practice optometry in West Virginia. As the board concluded:

Testimony was given by Jerry Lowther, Lois Snyder, Gregory Phillips, Mary Frances Poling, and Toby [sic] Allen that they had gone to 20/20 Vision Centers, Fairmont Mall, Fairmont, West Virginia, for eye examinations and each had been examined by Charles W. North. Mr. North not only examined their eyes but also prescribed eyeglasses and contact lenses. Their testimony clearly discloses that respondent allowed Charles W. North, a former student at West Virginia University's School of Medicine, to function virtually without assistance or guidance in eye examinations, the prescribing of corrective lenses and the diagnosis of visual problems, any one of which would have been harmful or dangerous to the patient then involved. The Board feels this is established by the testimony of any one of the aforementioned witnesses.[1]

An appeal from the board's ruling was taken by the appellant to the Circuit Court of Marion County. The Circuit Court of Marion County, by order entered on April 11, 1980, affirmed the ruling of the board.

The appellant in his petition for appeal sets forth eight assignments of error by the circuit court as a basis for relief in this Court. Those assignments of error raise the same issues prevalent throughout the

---

1. The June 29, 1979, ruling of the West Virginia Board of Optometry further stated as follows:

The evidence presented by the State of West Virginia further establishes that the respondent has previously engaged in what can only be described as a plan of false and deceptive advertising from his principal place of business in Columbus, Ohio. It has been clearly shown that the respondent created a corporation and thereafter advertised the sale of contact lens on a nationwide basis and then participated in the receipt and handling of approximately Three Hundred Thousand Dollars ($300,000.00), without sending the lens to a

great majority of those who sent money to respondent's corporation in their good faith attempt to purchase lens from him at the advertised discount prices. Such conduct on behalf of a professional optometrist cannot and should not be condoned. By itself, such deceptive and misleading practices would justify this Board in revoking or suspending the license of any practitioner in the State of West Virginia. However, the Board is aware these activities took place in the State of Ohio and for this reason a somewhat different view has been taken of their overall effect in this proceeding.

history of this litigation. The assignments of error suggest that the circuit court erred in affirming the ruling of the West Virginia Board of Optometry because: (1) the board was improperly constituted, inasmuch as no lay persons had been appointed by the governor to serve upon the board, (2) the rules and regulations of the board are unconstitutional, inasmuch as such rules and regulations require that the board and its investigative committee serve in the alleged incompatible roles of complainant or prosecutor and judge, (3) the proceedings before the board against the appellant were not impartial, inasmuch as the Deputy Attorney General served in the alleged incompatible roles of attorney for the board and prosecutor of the appellant, (4) the board in violation of its own rules and regulations failed to appoint an investigative committee to consider the charges against the appellant, (5) the appellant was deprived of due process, inasmuch as the board failed to provide him with a list of witnesses and documents prior to the hearing before the board, (6) the appellant and Charles W. North were exempt from the operation of West Virginia law regulating the practice of optometry, (7) the members of the board were disqualified from considering the charges against the appellant, inasmuch as "their agent," Dr. Claud A. Kendall, Chairman of the Committee to Investigate Optometric Violations, had a pecuniary interest in the outcome of the proceedings against the appellant and (8) the members of the board were disqualified from considering the charges against the appellant, inasmuch as they personally had a pecuniary interest in the outcome of the proceedings against the appellant.

The State's position in this appeal represents the antithesis of the above assignments of error. Those assignments will be combined for purposes of this opinion.

It should be noted that the proceedings concerning the appellant before the West Virginia Board of Optometry and judicial review of those proceedings were subject to various statutory provisions: *W.Va. Code*, 29A–1–1 [1982], *et seq.*, known as the "West Virginia Administrative Procedures Act," [2] *W.Va.Code*, 30–1–1 [1931], *et seq.*, setting forth general provisions applicable to state boards of examination or registration, and *W.Va.Code*, 30–8–1 [1931], *et seq.*, relating to the practice of optometry. Circuit court review of a ruling of the West Virginia Board of Optometry may be sought pursuant to *W.Va.Code*, 29A–5–4 [1964], and *W.Va.Code*, 30–1–9 [1931]. Review before this Court may be sought pursuant to *W.Va.Code*, 29A–6–1 [1964], *W.Va.Code*, 30–1–8(e) [1931], and *W.Va. Code*, 30–1–9 [1931].

I

The appellant contends that the board was improperly constituted inasmuch as no lay persons had been appointed by the governor to serve upon the board. The appointment of such lay persons to the West Virginia Board of Optometry is required by *W.Va.Code*, 30–1–4a [1977]. That statute provides, in part:

Notwithstanding any provisions of this Code to the contrary, the governor shall appoint at least one lay person to represent the interests of the public on every health professional licensing board enumerated in section fifteen of this article. If the total number of members on any of such boards after the appointment of one such lay person is an even number, one additional lay person shall be appointed. Said lay members shall serve in addition to any other members otherwise provided for by law or regulation. Such lay members shall be of the age of eighteen years or over, of good moral character, and competent to represent and safeguard the interests of the public. The lay member is empowered to participate in and vote on all transactions and business of the board, committee or group to

2. The West Virginia Administrative Procedures Act, *W.Va.Code*, 29A–1–1 [1982], *et seq.*, was applicable to this action by virtue of *W.Va.Code*, 29A–1–2(a) [1982], which section defines "Agen-cy" within the meaning of the Administrative Procedures Act as generally including state boards. *See also W.Va.Code*, 29A–1–3 [1982].

which he is appointed.[3]

However, *W. Va. Code*, 30–1–5 [1931], provides, in part: "A majority of the members of the board shall constitute a quorum for the transaction of its business." *See also* art. II, sec. 3, of the rules and regulations of the board.

In *State v. Barhorst*, 106 Ohio App. 335, 153 N.E.2d 514 (1958), the Court of Appeals of Ohio had before it a statute which provided that a majority of the Board of Optometry shall constitute a quorum and that a concurrence of a majority of the members of the board was required to grant or revoke a license to practice optometry. The court in *State v. Barhorst*, noting that the Board of Optometry was composed of five members, stated as follows:

> Hence, it has always required the presence of not less than three members of the Board at any meeting to transact any business at all. It is also quite clear that no action of the Board may be taken at all except at a regular meeting with a quorum present, and that three or more votes are required to grant or revoke a license.

106 Ohio App. at 343, 153 N.E.2d at 520.

The record indicates that at the hearing before the board beginning on February 6, 1979, board members Ronald George, J. Gordon Butterfield, Harry Murray, L.C. Hoblitzell and W. Mason Isiminger were present. Dr. Isiminger disqualified himself from considering the evidence against the appellant. However, the record clearly indicates that a quorum of board members existed during that hearing and at other proceedings before the board concerning the revocation of the appellant's license to practice optometry.

We decline to aggrandize the language of *W. Va. Code*, 30–1–4a [1977], to the extent, suggested by the appellant, that the West Virginia Board of Optometry cannot transact business without lay members. Consistent with the evident intent of the West Virginia legislature in this matter, we hold that where appointments of lay persons by the governor of this State to the West Virginia Board of Optometry pursuant to *W. Va. Code*, 30–1–4a [1977], had not been made, the West Virginia Board of Optometry, nevertheless, had jurisdiction to conduct license revocation proceedings against an optometrist practicing in this State, where the record indicated that, pursuant to *W. Va. Code*, 30–1–5 [1931], a quorum of board members existed during the transaction of business relating to such revocation proceedings.[4]

## II

The appellant asserts that he was deprived of due process, inasmuch as the board failed to provide him with a list of witnesses and documents prior to the hearing before the board. The appellant supports that assertion by relying principally upon the rules and regulations of the board. Art. IX, sec. 1, of those rules and regulations provides as follows:

> Complaints that a lay person, firm, or corporation is practicing optometry without a license or otherwise violating the optometry laws of this State may be made to the Board by letter setting forth the following information:
>
> (1) The name and address of the person, firm or corporation so violating the law.
>
> (2) The nature of the violation.
>
> (3) The time and place where the violation occurred.

---

3. The provisions of *W. Va. Code*, 30–1–4a [1977], apply to the West Virginia Board of Optometry by virtue of *W. Va. Code*, 30–1–15 [1977].

4. In *Feinblum v. Louisiana State Board of Optometry Examiners* 97 So.2d 657 (La.App.1957), the Governor of Louisiana was required by statute to appoint members of the Louisiana State Board of Optometry Examiners from a list provided by the Louisiana State Association of Optometrists, an unincorporated association. That

unincorporated association, however, ceased to exist, and the governor appointed the board members in question from a list provided by the Louisiana State Association of Optometry, Inc., a corporation. In *Feinblum*, the Court of Appeal of Louisiana held that the members of the Louisiana State Board of Optometry Examiners were *de facto* officers and that the right of those members to occupy their offices upon the board could not be collaterally attacked.

(4) A list of persons, if any, who witnessed the violation.

(5) Any photographs, letters, advertisements or other documents, if available.

*See also* art. VIII, sec. 1, of the rules and regulations.

In its ruling of June 29, 1979, the board stated that it considered only the testimony of the following witnesses: Jerry Lowther, Lois Snyder, Gregory Phillips, Mary Frances Poling, Tobey Allen and Claud Kendall, O.D. Pursuant to the January 2, 1979, notice of hearing, the appellant was informed that witnesses Lowther, Snyder, Allen and Kendall had complained against the appellant concerning Charles W. North. The appellant was informed by the complaint attached to the July 31, 1978, notice of hearing that witnesses Phillips and Poling, among others, had been unlawfully examined and treated by Charles W. North at the appellant's Fairmont office. Accordingly, this Court is of the opinion that the board complied with art. VIII, sec. 1, and art. IX, sec. 1, of its rules and regulations, inasmuch as the appellant was, in fact, provided with a "list of persons, if any, who witnessed the violation," and the testimony of other witnesses not so listed was not considered by the board.

We hold that where the rules and regulations of the West Virginia Board of Optometry required that an optometrist charged with a violation of the optometry laws of this State be provided in writing with a list of persons, if any, who witnessed the alleged violation, such rules and regulations were complied with by the West Virginia Board of Optometry, where the written notices of hearing before the board upon the violation provided the names of persons who complained against the optometrist concerning the violation, and the testimony of other persons against the optometrist whose names were not provided in the notices or in any other document prior to the hearing was not considered by the board.

Moreover, this Court, upon an examination of the record, finds no ground upon which to grant relief to the appellant with respect to his assertion that he failed to be provided with a list of documents prior to the hearing before the board.

### III

██ The appellant asserts that the members of the board were disqualified from considering the charges against the appellant, inasmuch as "their agent," Dr. Claud A. Kendall, Chairman of the Committee to Investigate Optometric Violations, had a pecuniary interest in the outcome of the proceedings against the appellant. The appellant further asserts that the members of the board were disqualified from considering the charges against the appellant, inasmuch as they personally had a pecuniary interest in the outcome of the proceedings against the appellant. Those assertions are based upon the theory that if the license of the appellant were revoked, the businesses of Dr. Kendall and the members of the board, as optometrists, would increase. For the reasons stated below, we find those assertions to be without merit.

In *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), the Alabama Board of Optometry, *et al.* instituted state proceedings against the plaintiffs to prevent the plaintiffs from the practice of optometry as employees of a business corporation. The plaintiffs filed an action in federal district court to enjoin the Alabama Board of Optometry from conducting hearings and revoking the licenses of the plaintiffs to practice optometry. The three-judge district court held in favor of the plaintiffs.

In *Gibson,* the Supreme Court of the United States affirmed the district court's conclusion that the members of the Alabama Board of Optometry had a pecuniary interest of sufficient substance in the state proceedings against the plaintiffs to disqualify the members of the board from proceeding against the plaintiffs. The relevant facts and the district court's conclusion were described by the Supreme Court of the United States as follows:

> Secondly, the District Court determined that the aim of the Board was to revoke the licenses of all optometrists in the State who were employed by busi-

ness corporations such as Lee Optical, and that these optometrists accounted for nearly half of all the optometrists practicing in Alabama. Because the Board of Optometry was composed solely of optometrists in private practice for their own account, the District Court concluded that success in the Board's efforts would possibly redound to the personal benefit of members of the Board, sufficiently so that in the opinion of the District Court the Board was constitutionally disqualified from hearing the charges filed against the appellees [plaintiffs].

411 U.S. at 578, 93 S.Ct. at 1698, 36 L.Ed.2d at 500.

Unlike the facts in *Gibson*, the action before this Court did not involve a conflict between those optometrists employed by business corporations and those engaged in private practice. Unlike *Gibson*, the ruling of the board in this action directly related to only one optometrist, the appellant, rather than to a significant number of optometrists practicing within a state.

In *Eddy v. West Virginia Board of Optometry*, 116 W.Va. 698, 182 S.E. 870 (1935), the West Virginia Board of Optometry gave notice to the petitioner to show cause why his license should not be revoked. The petitioner, asserting that the notice failed to adequately inform him of the nature of his alleged misconduct, sought by prohibition to preclude action by the board. This Court, holding that the notice was sufficient to inform the petitioner of the charge against him, denied relief.

In *Eddy*, this Court stated as follows with respect to the administrative function performed by the West Virginia Board of Optometry:

The right of the legislature, in exercise of police power of the state, to prescribe reasonable rules and regulations, in reference to optometry was recognized in the recent case of *Eisensmith v. Buhl Optical Co.*, 115 W.Va. 776, 178 S.E. 695. But, insists petitioner, the right to con-

sider and determine whether or not a practitioner's license should or should not be suspended or revoked is a judicial, or quasi-judicial function, the exercise of which may not, in view of the interest of the several members of the board in keeping competition down in the profession, be delegated to such board. In this petitioner loses sight of the fact that revocation of a license is no more a judicial function than that of licensing; that both are a part of the regulatory measure. (citations omitted). As stated in Throop on Public Officers, sec. 617: 'The maxim that no man shall be judge in his own case "applies to judicial officers, but not to officers whose duties partake of an administrative character, and are only quasi-judicial. * * * If this objection should prevail, assessors, highway commissioners, tax commissioners, and many other boards of public officers, would be incompetent to act, and it would be impracticable to exercise some of the most important functions of the government." '

116 W.Va. at 700, 182 S.E. at 871.

In *Kachian v. Optometry Examining Board*, 44 Wis.2d 1, 170 N.W.2d 743 (1969), the plaintiff, an optometrist, asserted that because all members of the Wisconsin Examining Board of Optometry were required to be optometrists, such board had an inescapable and improper pecuniary interest when sitting in judgment of other optometrists. The Court in *Kachian* rejected the plaintiff's assertion of impropriety, and quoting Annot., 97 A.L.R.2d 1210, 1220 (1964) the following was set forth as the basis of the court's conclusion: "[I]t appears to be a general rule that membership in or connection with the same profession or occupation as that of the accused licensee does not alone indicate a disqualifying bias or interest on the part of the questioned tribunal member sufficient to violate due process." 44 Wis.2d at 11, 170 N.W.2d at 748.[5]

---

5. In *Kachian, supra,* the court stated as follows:
If the indirect interest deriving from membership in the profession or occupation being regulated disqualifies an individual from serv-

ing on a regulatory board, the result would be dentists could not examine dentists, attorneys could not serve on bar examiner boards, pharmacists could not give pharmacy examina-

Of course, if lay persons had served upon the board in this action, as required by *W. Va. Code*, 30–1–4a [1977], the magnitude of the problem of the pecuniary interest of board members who are practicing optometrists would have been lessened. However, based upon the evidence in this action, the question of pecuniary interest is speculative rather than compelling, and we find no merit in those assignments of error.

Specifically, we hold that the fact that members of the West Virginia Board of Optometry or members of board committees are practicing optometry in this State does not ordinarily suggest that such board or committee members have a pecuniary interest of sufficient substance to disqualify them from participating in license revocation proceedings against an optometrist also practicing in this State.

## IV

This Court is of the opinion that the appellant's remaining assignments of error are without merit.

First, the appellant asserts that the rules and regulations of the board required that the board and its investigative committee serve in the alleged incompatible roles of complainant or prosecutor and judge. Similarly, the appellant asserts that the proceedings before the board against the appellant were not impartial, inasmuch as the Deputy Attorney General served in the alleged incompatible roles of attorney for the board and prosecutor of the appellant. We find nothing in the record to indicate that, as a result of those alleged incompatible roles, the appellant was a victim of unfair administrative proceedings.

In *Kachian, supra,* the plaintiff, an optometrist, asserted that the authority of the Wisconsin Examining Board of Optometry to issue complaints as well as orders and to conduct hearings constituted an improper mixing of roles violative of a fair hearing and due process. The court, how-

ever, rejected that assertion and quoting Annot., 97 A.L.R.2d 1210, 1215 (1964), stated as follows: "There is authority from several jurisdictions that disqualification for bias or interest will not result where the hearing body or its subordinates, acting within the scope of their proper ministerial functions, participated in the origination of charges against the licensee." 44 Wis.2d at 13, 170 N.W.2d at 749.

■ Consequently, we hold that license revocation proceedings before the West Virginia Board of Optometry, wherein charges filed against an optometrist practicing in this State were investigated, heard and evaluated before the board and its appointed committee, did not violate due process *per se* through the alleged mixing of the roles of complainant or prosecutor and judge. As stated in *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), concerning the Wisconsin Medical Examining Board: "The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing." 421 U.S. at 55, 95 S.Ct. at 1468, 43 L.Ed.2d at 728. In *Withrow,* the Court noted as follows:

The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of

tions. Would it be preferable, or even workable, to have the dentists giving bar examinations and optometrists giving pharmacy tests? The gain in presumed purity would be matched by a loss in knowledge and experience in drafting and administering profes-

sional and occupational rules and regulations. In any event, the question of public policy involved in the composition of administrative agencies is for the legislature to debate and decide, short of constitutional requirements. 44 Wis.2d at 12, 170 N.W.2d at 748–49.

due process is to be adequately implemented.

Very similar claims have been squarely rejected in prior decisions of this Court. 421 U.S. at 47, 95 S.Ct. at 1464–65, 43 L.Ed.2d at 723–24.

Second, the appellant asserts that the board in violation of its own rules and regulations failed to appoint an investigative committee to consider the charges against the appellant. Article VIII, sec. 2, of the rules and regulations of the board provides that to determine if a hearing before the board is necessary, "[t]he president of the Board shall appoint a committee of such number as he deems necessary to consider all charges filed with the Board...." *See also,* art. IX, sec. 2, of the rules and regulations of the board. The record indicates, however, that such a committee was, in fact, appointed. Attached to the July 31, 1978, notice of hearing before the board was the complaint of Dr. Claud A. Kendall. That complaint indicated that Kendall was the "Chairman of the Committee to Investigate Optometric Violations." In any event, Kendall testified before the board as follows:

A. The State Board then took the evidence in an envelope and appointed another committee of three to investigate my findings to see whether they should legally act on it, whether it was worthy of it or not.

Q. Do you know who the members of that committee were?

A. Yes. Doctor Hill from Grafton; Doctor Farmer Monroe from Grafton, Monroe Farmer rather; and Doctor Dale Plummer, Nutter Fort.

Finally, we find no merit in the assertion of the appellant that he and Charles W. North were exempt from the operation of West Virginia law regulating the practice of optometry. The appellant was engaged in the practice of optometry during the period in question within the meaning of *W.Va.Code,* 30–8–2 [1976]. It is without question that the West Virginia legislature intended to regulate the type of activities which took place in the appellant's Fairmont office.

■ The practice of optometry is defined in *W.Va.Code,* 30–8–2 [1976].[6] The unlawful practice of optometry is prohibited by various sections of *W.Va.Code,* ch. 30, art. 8, such as *W.Va.Code,* 30–8–8 [1967]. Upon a careful examination of the record, and specifically the testimony submitted to the board at the hearing beginning on February 6, 1979, this Court is of the opinion that the evidence supports the conclusions of the board and circuit court that the appellant unlawfully permitted Charles W. North to practice optometry in the appellant's office in Fairmont. Various persons identified in the two notices of hearing testified, *inter alia,* before the board that North conducted eye examinations at the appellant's office, diagnosed visual problems and was at different times referred to as "Dr. North." Such evidence supports

---

6. *W.Va.Code,* 30–8–2 [1976], provides as follows:

Any one or any combination of the following practices shall constitute the practice of optometry:

(a) The examination of the human eye, with or without the use of drugs prescribable for the human eye, which drugs may be used for diagnostic or therapeutic purposes for topical application to the anterior segment of the human eye only, and, by any method other than surgery, to diagnose, to treat or to refer for consultation or treatment any abnormal condition of the human eye or its appendages;

(b) The employment without the use of surgery of any instrument, device, method or diagnostic or therapeutic drug for topical application to the anterior segment of the human eye intended for the purpose of investigating, examining, treating, diagnosing, im-

proving or correcting any visual defect or abnormal condition of the human eye or its appendages;

(c) The prescribing and application or the replacement or duplication of lenses, prisms, contact lenses, orthoptics, vision training, vision rehabilitation, diagnostic or therapeutic drugs for topical application to the anterior segment of the human eye, or the furnishing or providing of any prosthetic device, or any other method other than surgery necessary to correct or relieve any defects or abnormal conditions of the human eye or its appendages.

Nothing in this section shall be construed to permit an optometrist to perform surgery, use drugs by injection or to use or prescribe any drug for other than the specific purposes authorized by this section.

the revocation of the appellant's license to practice optometry in this State.

Upon all the above, the final order of the Circuit Court of Marion County, West Virginia, entered on April 11, 1980, is hereby affirmed.

Affirmed.