COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Annunziata and Senior Judge Willis
Argued at Alexandria, Virginia


AZAM MOHAMMED KHAN

v.       Record No. 0497-03-4

COMMONWEALTH OF VIRGINIA,                    OPINION BY
 AUCTIONEERS BOARD                   JUDGE JERE M. H. WILLIS, JR.
                                              FEBRUARY 17, 2004
PARK ROYAL GALLERIES, LTD.

v.       Record No. 0498-03-4

COMMONWEALTH OF VIRGINIA,
 AUCTIONEERS BOARD


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James H. Chamblin, Judge

Howard B. Silberberg (August Bequai, on briefs), for appellants.

William A. Diamond, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on briefs), for appellee.


Azam Mohammed Khan, a licensed auctioneer, and Park Royal Galleries, Ltd., a licensed

auction firm, (together appellants) appeal decisions by the trial court affirming orders of the

Auctioneers Board (the Board) dated January 10, 2002, imposing monetary penalties upon

appellants and suspending Khan's auctioneer's license.  On appeal, appellants contend:  (1) the

Board was not authorized to take action in the cases because it lacked the statutorily required

number of members; (2) the dismissal of two circuit court cases was binding on the Board; (3)

the trial court erroneously disregarded legal precedent; (4) the trial court erroneously relied on

law school notes as a basis for its decision; (5) the Board failed to follow its regulations; and (6)

the Board erroneously considered a prior consent order in determining whether to impose a sanction on Khan. We affirm the judgment of the trial court.

Background

On March 15 and 16, 1997, Khan, on behalf of Park Royal Galleries (Park Royal), conducted an auction on the grounds of the residence of Robert Gray, a cabinet secretary under President Dwight D. Eisenhower. Appellants placed in the Washington Post an advertisement which mentioned Gray's name and stated that the auction would be an "important" estate auction. Patricia Brockbank attended the auction, believing the items for sale belonged to the Gray family.

Brockbank was interested in an oriental carpet that Khan told her was part of the Gray estate and was worth $100,000. She purchased the rug from Khan for $20,000, plus a ten percent buyer's premium. She later learned that the carpet had not belonged to Gray. After she failed to receive a certificate of authenticity from Khan as promised, she had the carpet appraised and was told that the rug's value was $10,800.

Brockbank filed in Arlington County Circuit Court a lawsuit against appellants, alleging they had misrepresented the rug to her and seeking a refund of her money. The case did not go to trial. By order entered October 9, 1998, the circuit court dismissed the case with prejudice. In 1999, Brockbank filed a similar suit in Fairfax County Circuit Court. The court dismissed that suit on grounds of res judicata and collateral estoppel.

In 1998, Brockbank filed a complaint with the Department of Professional and Occupational Regulation, which regulates the licensure of auctioneers through the Board. In her complaint, Brockbank alleged that Khan had represented to her that the rug had belonged to Gray and that it was valued at $100,000. During an investigation of the incident by the Board's agent,

Khan failed to produce requested records concerning the Gray estate auction, stating that the records had been lost.

On September 6, 2001, Samuel Updike, a member of the Board, held an informal fact finding conference in which appellants participated. The charges against appellants were set forth in four counts.

Count I charged that the advertisement placed in the Washington Post by appellants concerning the Gray estate auction violated one of the Board's regulations. See 18 VAC 25-21-100(A).[1]

Count II charged that Khan made oral misrepresentations to Brockbank concerning the rug. The Board dismissed Count II, finding insufficient evidence to impose sanctions for this count.

Counts III and IV related to appellants' record keeping. Count III alleged that appellants failed to retain records of the Gray estate auction for four years as required by 18 VAC

---

[1] 18 VAC 25-21-100(A) provides: "All advertising must be truthful. Advertising shall contain no false, misleading or deceptive statements, with respect to types or conditions of merchandise offered at auction, why merchandise is being sold, who has ownership, where the merchandise was obtained, or the terms and conditions of the auction and sale."

25-21-160.[2]  Count IV alleged that appellants violated 18 VAC 25-21-180(A)(5)[3] by failing to produce records of the Gray estate auction when requested by the Board.

Mr. Updike recommended that the Board impose upon each appellant monetary penalties of $1,000 for each violation of Counts I, III and IV.  The parties failed to agree to a consent order and on October 18, 2001, the Board considered the cases.  Three members of the Board were present at the meeting.  The minutes of the meeting reported a fourth member was absent, but that a quorum was present.

Counsel representing both appellants argued to the Board their disagreements with the summary and recommendations from the fact finding conference.  Khan also made a presentation to the Board.  Mr. Updike was not present during these presentations and he did not participate in the Board's deliberations, pursuant to Code § 54.1-110(B).  The two remaining members of the Board deliberated in closed meeting.  The Board adopted Mr. Updike's summary, finding that

---

[2] 18 VAC 25-21-160 provides:

> The contract drawn with each owner; auction records, including but not limited to lists of buyers and their addresses; and clerk sheets showing the items sold including the buyers' numbers or names and the selling prices and the final settlement papers shall be retained for a period of four years from the date of settlement. These business records shall be available for inspection by the board or its designees as deemed appropriate and necessary.

[3] 18 VAC 25-21-180(A)(5) provides:

> The board has the power to fine any individual or firm licensee, or to suspend or revoke any license issued under the provisions of Chapter 6 (§ 54.1-600 et seq.) of Title 54.1 of the Code of Virginia and the regulations of the board pursuant to the provisions of the Administrative Process Act . . . if it finds that:

> The licensee, auction firm, or firm owner refuses or fails, upon request or demand, to produce to the board or any of its agents any document, book, or copy thereof in licensee's or owner's possession concerning the performance of auctioneering duties.

- 4 -

appellants had committed the acts alleged in Counts I, III and IV. The Board imposed monetary sanctions and suspended Khan's auctioneer's license for a period of six months.

Having determined that its summaries and recommendations contained errors, on January 10, 2002, the Board reconsidered appellants' cases with amended summaries and recommendations. Four members of the Board, including Mr. Updike, attended that meeting. The minutes state that "finding a quorum present," the meeting was called to order. Mr. Updike did not participate in appellants' cases.

Counsel for appellants presented arguments to the Board members via telephone. Counsel asserted that Code §§ 54.1-200 and 54.1-602(A) required that the Board have at least five members in order to act, noting that at that time, the Board consisted of only four members. Counsel presented further arguments concerning the four counts. The three board members then convened in closed session to consider the cases. Based on the facts of the case, the seriousness of appellants' actions, and Khan's record with the Board, the Board found violations as charged in Counts I, III and IV. The Board imposed $3,000 in monetary penalties upon each appellant and suspended Khan's auctioneer's license for a period of one year.

On appeal, the trial court affirmed the Board's decisions.

Analysis

I.

Relying on Code §§ 54.1-200 and 54.1-602(A), appellants contend that because the Board consisted of fewer than five members, it could take no action and impose no sanctions. Code § 54.1-200 provides, in part: "A regulatory board established to administer a system of certification or licensure . . . unless otherwise specified by law, shall consist of at least five members." Appellants argue that because the Board consisted of fewer than five members,

rather than "at least" five members, it was not legally constituted and could not act on the charges against them.

Code § 54.1-200 is located in the "General Provisions" chapter of the statutes concerning the Department of Professional and Occupational Regulation. However, Code § 54.1-602(A) is located in the chapter that addresses auctioneers and the Auctioneers Board specifically. Code § 54.1-602(A) provides, in part: "The Auctioneers Board shall be composed of five members . . . ." When statutes conflict, we presume the legislature intended that the more specific provision control. See Tharpe v. Commonwealth, 18 Va. App. 37, 43-44, 441 S.E.2d 228, 232 (1994). Although the two statutes have similar wording, Code § 54.1-602(A) specifically addresses the Auctioneers Board. Therefore, Code § 54.1-602(A) applies here.

Appellants argue that "shall," as employed in Code § 54.1-602(A), is mandatory, not permissive. Thus, they argue that the Board could not conduct business while comprised of fewer than five members serving under active appointments. This issue has not heretofore been addressed directly in Virginia. However, the Supreme Court has interpreted "shall" to be directory rather than mandatory in the context of actions taken by public officials.

> "[T]he use of 'shall,' in a statute requiring action by a public official, is directory and not mandatory unless the statute manifests a contrary intent." As far back as 1888, when this Court addressed a statute that used the term "shall," we stated that "[a] statute directing the mode of proceeding by public officers is to be deemed directory, and a precise compliance is not to be deemed essential to the validity of the proceedings, unless so declared by statute."

Butler v. Commonwealth, 264 Va. 614, 619, 570 S.E.2d 813, 816 (2002) (citations omitted). Code § 54.1-602(A) contains no language prohibiting the Board from acting when fewer than five members are serving active appointments. In the absence of such language, the provision of the statute prescribing the number of board members is directory rather than mandatory.

Furthermore, Code § 54.1-105 sets forth and controls the authority of the Board to act. Code § 54.1-105 is entitled "Majority of board or panel required to suspend or revoke license, certificate or registration; imposition of sanctions." It provides: "An affirmative vote of a majority of those serving on a board who are qualified to vote . . . shall be required for any action to suspend or revoke a license, certification or registration or to impose a sanction on a licensee." At the January 10, 2002 board meeting, the results of which appellants appealed to the trial court, four board members had been appointed to the Board, and all four members were present. The minutes of the meeting state that a quorum of the Board was present. One board member did not participate in the decision of appellants' cases. The decision was made by three members, a majority whether the Board consisted of four or five members.

This interpretation comports with decisions of other states.

> "The almost universally accepted common-law rule is . . . [that] a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body." . . . A board may act as long as there exists a quorum equal to a majority of all the actual members of the board.

Levinson v. Connecticut Board of Chiropractic Examiners, 560 A.2d 403, 418 (Conn. 1989) (citations omitted).

> [W]here appointments of lay persons by the governor of this State to the West Virginia Board of Optometry . . . had not been made, the West Virginia Board of Optometry, nevertheless, had jurisdiction to conduct license revocation proceedings against an optometrist practicing in this State, where the record indicated that, pursuant to W. Va. Code, 30-1-5 [1931][4], a quorum of board members existed during the transaction of business relating to such revocation proceedings.

Serian v. State, 297 S.E.2d 889, 893 (W. Va. 1982) (footnote added).

---

[4] W. Va. Code § 30-1-5 provides in part: "A majority of the members of the board shall constitute a quorum for the transaction of its business."

Appellants also contend that action by the Board when fewer than five members had been appointed deprived them of their due process rights.

> The right of every person to engage in any lawful profession, trade or occupation of his choice is clearly protected by both the Constitution of the United States and the Constitution of the Commonwealth of Virginia. The Commonwealth cannot abridge such rights except as a reasonable exercise of its police powers when it is clearly found that such abridgment is necessary for the preservation of the health, safety and welfare of the public.

Code § 54.1-100. However, the Commonwealth is authorized to impose regulations upon professions or occupations in order to protect the public interest when, among other circumstances, "the unregulated practice of the profession or occupation can harm [the] welfare of the public." Code § 54.1-100(1). The Board serves an administrative function, regulating the licensure of auctioneers, including suspending licenses and imposing sanctions for cause. This legislative purpose would be forestalled if transient vacancies were permitted to impair the Board's ability to perform its duties. Code § 54.1-105 requires an affirmative vote of a majority of those serving on the Board to suspend a license or impose a sanction. A majority of the Board acted in appellants' cases. Accordingly, we hold that those decisions were properly authorized and that no due process rights were impaired.

## II.

Appellants contend the dismissals of Brockbank's circuit court cases were binding on the Board, precluding the Board from acting on her complaint. Res judicata "precludes relitigation of a claim or issue once a final determination on the merits has been reached by a court of competent jurisdiction." Neff v. Commonwealth, 39 Va. App. 13, 18, 569 S.E.2d 72, 75 (2002). Brockbank alleged in her civil suits that Khan gave her false and misleading information concerning the history and value of the rug, thereby inducing her to purchase the rug. Similarly, Count II of the Board's action alleged that Khan made statements to Brockbank which

misrepresented the ownership and value of the rug. However, Count I concerned the advertisement placed by appellants in the Washington Post, and Counts III and IV involved record keeping violations, none of which was addressed in Brockbank's complaints. Indeed, appellants admitted in their argument to the trial court that the res judicata argument did not apply to Counts III and IV. The lawsuits involved issues relevant only to Count II. The Board dismissed Count II. The resolution of Brockbank's circuit court cases had no bearing on Counts I, III and IV and, thus did not preclude the Board's actions with respect to those charges.

### III. and IV.

Appellants contend the trial court erred by disregarding precedent that it believed was wrongly decided and by relying on its law school notes in making its decision. However, appellants failed to present these arguments to the trial court. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of these questions on appeal. The record reflects no reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

### V.

Appellants contend that because the Board made no finding that they possessed records requested by the Board, it erred in finding that they violated 18 VAC 25-21-180(A)(5) by failing to produce the requested records. Appellants also assert that, because the Board charged them in Count III with failing to retain certain records, it was foreclosed from also charging in Count IV that they failed to produce those records.

Appellants represented to the Board and to the trial court that when they moved their business to a new location, they lost or misplaced the records requested by the Board concerning the Gray estate auction. However, an employee of Park Royal told a Board investigator that

records for the Gray auction were entered into the company's computer system and were "backed up" on tape. The employee stated that the history of the carpet was in the computer as item number E2782. This supported the charge in Count IV, failing to produce records. Even if appellants had misplaced hard copies of the Gray estate auction records during their move, they did not explain why they did not produce copies from their computerized records.

For the same reason, appellants' argument regarding the alleged inconsistency in charging that they violated both the record keeping regulation and the record production regulation is without merit. Appellants' own assertions that they lost records supported the violation of Count III, the failure to maintain records. Given the evidence that certain relevant records existed in Park Royal's computer system, the Board could have concluded that, although some hard copies of the requested records may have been lost or misplaced, other requested evidence existed on Park Royal's computer system, yet was not disclosed. Therefore, the evidence supported a violation of both regulations.

VI.

Citing Code § 2.2-4019, Khan contends the Board, in rendering its decision, erred by considering a prior consent order in which Khan did not admit to a violation of the Board's regulations. Code § 2.2-4019 provides that "[a]gencies may, in their case decisions, rely upon public data, documents or information only when the agencies have provided all parties with advance notice of an intent to consider such public data, documents or information."

The Board's January 22, 2002 final opinion and order regarding Khan's case states that the Board based its decision on the facts of the case, the seriousness of Khan's actions, and his record with the Board, including several prior consent orders. On October 18, 2001, three months before it issued its final opinion and order, the Board considered the same prior consent order in rendering its decision. On January 10, 2002, the Board reconsidered appellants' cases

and appellants' counsel participated in that proceeding via telephone. The minutes of that Board meeting disclose that, prior to the Board's deliberation of the cases, Khan's counsel argued to the Board that one of the prior consent orders did not contain an admission of a violation by Khan. Khan knew for three months that the Board had considered this consent order in its October 2001 meeting. Thus, he clearly had "advance notice" that the Board might consider that consent order in its reconsideration of the cases in January 2002. Under these circumstances, the Board's consideration of the document complied with the statute and did not prejudice Khan.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>