Iowa-Illinois Gas and Electric Company, a corporation, plaintiff, v. Hon. James P. Gaffney, Judge of Eighth Judicial District, defendant.

## No. 51414.

(Reported in 129 N. W.2d 832)

AUGUST 11, 1964.

David M. Elderkin of Barnes, Wadsworth, Elderkin, Locher & Pirnie, of Cedar Rapids, R. H. Ivie of Hart, Shulman, Phelan, Tucker & Ivie, of Iowa City, and William B. Waterman, of Davenport, all for plaintiff.

William F. Sueppel, William L. Meardon, Ansel Chapman and Jay H. Honohan, all of Iowa City, for defendant.

SNELL, J.—This is an original certiorari action in this court by Iowa-Illinois Gas and Electric Company, a corporation, wherein it is claimed the Johnson District Court, Honorable James P. Gaffney, Judge, exceeded its jurisdiction in executing the mandate of this court. See Iowa-Illinois Gas and Electric Co. v. Iowa City, 255 Iowa 1341, 1365, 124 N.W.2d 840, 855.

Plaintiff is a public utility, furnishing gas and electric service in Iowa City and other communities. Iowa City Ordinances Nos. 2208 and 2209 enacted sometime prior to March 24, 1961, fixed the rates the utility company might charge for such services in the city. The company alleging that the rates so fixed were so low as to be confiscatory sought injunctive relief in the Johnson District Court. Upon the filing of a bond a temporary injunction was issued enjoining the enforcement of the rate ordinances. As of March 24, 1961, new rates in excess of those permitted by the ordinances were put into effect by the company.

Trial in the district court was followed by appeal to and decision by our court. In opinion filed November 12, 1963, we held "* * * plaintiff has failed to show by the requisite degree of proof that the rates fixed by the city are confiscatory." (1363 of 255 Iowa, 124 N.W.2d 840, 854.) We then further held:

"The principle involved is that plaintiff shall return to such consumers the difference in rates collected by plaintiff and the rates established by ordinances of Iowa City, Nos. 2208 and 2209 from March 24, 1961, to whatever date such ordinance rates are placed in effect by plaintiff after the conclusion of this action." (Loc. cit. 1365 of 255 Iowa, 855 of 124 N.W.2d.)

We directed the filing of a supplemental opinion by the trial court pursuant thereto. Rehearing was subsequently denied and procedendo issued.

Following a district court hearing supplemental decree was filed on March 24, 1964. It was ordered "* * * that plaintiff shall promptly proceed to make refunds to each and every consumer of gas and electricity in Iowa City, Iowa, of the exact amount of the difference in rates collected by the plaintiff from each consumer from March 24, 1961 to March 24, 1964, in excess of ordinances of Iowa City, Iowa, Nos. 2208 and 2209, with in-

terest thereon at 5% per annum, said interest to be calculated as a single factor applicable to the principal amount to which each consumer is entitled, plus sales tax.

"That plaintiff shall mail to each consumer at his last known address, a check for refund as herein set forth, not later than June 1, 1964, the refund, interest and sales tax to be computed to March 24, 1964."

The decree then set out administrative and compliance procedures to be followed and then "ordered and decreed that pursuant to authority from the Supreme Court, plaintiff is directed and ordered to place in effect as of March 24, 1964, rates and charges set forth in ordinances Nos. 2208 and 2209 of Iowa City, Iowa, and promptly mail to the Iowa State Commerce Commission a certified copy of said ordinances.

"It is further ordered that a copy of this Findings, Orders, Supplemental Opinion and Decree shall be mailed to the Iowa State Commerce Commission at its office in Des Moines, Iowa."

Plaintiff sought, and we granted, certiorari and stayed proceedings upon the filing of a bond in the penal sum of $1,000,-000. Bond was filed and the writ issued.

I. Our opinion filed November 12, 1963, became the law of the case and it was the duty of both plaintiff and defendant herein to comply therewith. Des Moines Bank & Trust Co. v. Iowa Southern Utilities Co., 245 Iowa 186, 188, 189, 61 N.W.2d 724, and cases cited.

II. The petitioner in certiorari is the plaintiff and the respondent (inferior tribunal, board or officer) is the defendant. Rule 307, Rules of Civil Procedure; Penland v. Penland, 255 Iowa 308, 312, 122 N.W.2d 333, 335.

III. An action in certiorari is by ordinary proceedings. Rule 317, Rules of Civil Procedure. It is a separate, independent and original action. State v. District Court, 248 Iowa 250, 256, 80 N.W.2d 555. It is a law action. It is not triable de novo. It is a review to determine whether the acts challenged were legal. Grant v. Norris, 249 Iowa 236, 253, 85 N.W.2d 261.

As a general rule questions or findings of fact are not reviewable on certiorari. 14 C. J. S., Certiorari, section 172, quoted with approval in Grant v. Norris, supra.

IV. It was stated and admitted in argument that plaintiff has made the required refunds for the period up to July 4, 1963. The present controversy is accordingly limited to the period subsequent to that date.

V. Prior to July 4, 1963, the authority to set and fix utility rates was in the city council. Iowa City Ordinances Nos. 2208 and 2209 were enacted pursuant to section 397.28, 1958 Code of Iowa. This statute in the same form appears in our 1962 Code and remained in effect until July 4, 1963.

The Sixtieth General Assembly by chapter 286 enacted a Public Utility Regulation Act effective as a general law on July 4, 1963. Section 23 of that Act repealed, as of that date, the previously existing authority of cities to fix utility rates and placed future regulation of rates in the Iowa State Commerce Commission.

Section 25 of the Act provides: "Nothing herein contained shall be construed to invalidate any proceedings under statutes existing prior to the enactment of this Act; nor shall any action, litigation or appeal pending prior to the effective date of rate regulation of this Act be affected hereby."

VI. Plaintiff alleges five errors relied on to sustain the writ of certiorari. They are of varying importance, somewhat related and repetitious but will be considered in order.

VII. It is argued that defendant exceeded his jurisdiction in ordering plaintiff to make refunds by way of damages over and above those occasioned by the issuance of the injunction.

Plaintiff cites and quotes from, but not all of, a sentence appearing in 28 Am. Jur., Injunctions, section 343, page 858. The sentence as it appears in Am. Jur. reads:

"The measure of recovery is the amount necessary to compensate the defendant for losses which he sustained as the actual, natural and proximate result of the wrong committed by the injunction or restraining order granted, while the latter was alive and operative, and any actual damage suffered by reason thereof is a proper subject of inquiry."

With this statement we agree. From this premise plaintiff argues that the city's control over rates extended only to July 4, 1963 (the effective date of the repealing statute), and

that as a result the injunction was dissolved as of that date. We do not agree. Plaintiff's conclusion is an obvious non sequitur. The injunction was a part of pending litigation unaffected by the Act.

Section 25 of the utility Act quoted in Division V, supra, provides the exact opposite of plaintiff's contention. Pending litigation was not affected by the Act. On the effective date of the Act there was litigation pending between plaintiff herein and the city. The litigation had been pending since the issuance of the injunction in March 1961 and continued until the entry of the trial court's supplemental decree in March 1964.

The present certiorari action is a new action and an outgrowth, but not a part, of the original action. See Division III, supra.

While the city's future rate-making power was terminated as of July 4, 1963, the previously enacted ordinances were not repealed automatically. Neither was the injunction previously issued in connection with existing litigation dissolved. By the express terms of the utility Act neither the litigation in or decree of the district court nor the mandate of our court was in anyway affected. Under our mandate to the district court the only legally established gas and electric rates in Iowa City were those fixed by the ordinances. Until those rates are changed by legally constituted authority as discussed, infra, they constitute the measuring stick from which damages are computed.

■■ Plaintiff argues vigorously that the court does not fix utility rates. We agree. As to that proposition there is no dispute but when the court finds that rates collected are in excess of those permitted by a law or a regulation that is not confiscatory injunction will lie to prevent violation. When there has been a violation by way of excess charges the measure of damages is the difference between what could have been collected under a lawful rate and what was actually collected. We directed the trial court to not interfere with the ordinance rates and to order a refund of excess charges. The trial court acted accordingly.

Since litigation was not affected by the utility Act, the only legally established rates were those set by the city ordinances.

As long as plaintiff collected rates in excess of those legally established damages continued to accrue.

The injunction against the city was not dissolved nor was plaintiff's bond released. There is nothing in the record to indicate that defendant acted illegally in ordering a refund for the period subsequent to July 4, 1963.

Plaintiff argues that the rates legally in effect subsequent to July 4, 1963, were the rates which it had been charging and which it filed with the commerce commission. We do not agree for the reason that such rates had never been legally authorized.

As of July 4, 1963, plaintiff filed with the commerce commission a schedule showing the rates it was charging.

Section 4 of the utility Act provides:

"Every public utility shall file with the commission tariffs showing the rates and charges for its public utility services *and the rules and regulations under which such services were furnished*, on April 1, 1963, which rates and charges shall be subject to investigation by the commission * * *." (Emphasis added.)

This filing did not legally establish the rates being charged. The plaintiff's right to charge such rates was the subject of litigation that was in no way invalidated by the Act. When the litigation resulted adversely to plaintiff there was no legal basis for the rates claimed.

The statute provides that there be filed with the schedule of rates the rules and regulations under which the services were rendered. The rules and regulations under which the services were rendered necessarily included the ordinances governing rates. The rates as filed, if unaccompanied by supporting authority, were deficient in support or if accompanied by the required showing would clearly appear to be in conflict therewith.

While the litigation was pending and within the jurisdiction of the court that jurisdiction was exclusive and there was no authority in the company to change rates nor jurisdiction in the commission to permit such change. Incorporated Village of New Bremen v. Public Utilities Commission, 103 Ohio St. 23, 132 N.E. 162, 165.

The statute provides a method for a change in rates. We will discuss this in a subsequent division.

The statute did not permit the plaintiff to escape the limitations of previously authorized rates by filing a higher schedule under section 4 of the utility Act.

 The utility Act placed the future rate-making authority in the commerce commission with power to change rates. It was not an automatic repeal of all previous rate limitations nor authority for a utility to change authorized rates except by statutory procedure for change.

The utility Act places the authority in the commerce commission to review, regulate and permit changes in rates charged under previously existing and authorized schedules. It does not give to a utility the carte blanche authority to file schedules in excess of those authorized and then claim that it is legally proceeding thereunder.

Neither the trial court nor our court has attempted to fix rates. We did recognize the authority of the city prior to July 4, 1963, to fix rates and our duty to order compliance therewith. The duty of compliance with established rates continues. The rates may only be changed by due process of law. Due process is not accomplished by filing an unauthorized schedule with the commerce commission.

Section 4 of the Act also provides:

"Every rate, charge, rule and regulation contained in any filing made with the commission on or prior to the effective date of this Act shall be effective as of such effective date, subject, however, to investigation as herein provided. * * *."

What we have said, supra, also applies here. The filing of tariffs showing rates in excess of authority did not make such rates legal or effective. The statute contemplates the filing of legal tariffs and not such tariffs as were in litigation and subject to disapproval by the courts. If the tariffs as filed showed rates in excess of authority the filing thereof with the commission did not make them legal or in compliance with the statute.

VIII. Plaintiff's alleged errors 2 and 3 are argued together.

Plaintiff argues that the trial court exceeded its jurisdiction in ordering the company to place the ordinance rates into effect and to file said rates with the commerce commission.

Plaintiff's argument proceeds from the assumed premise that in ordering compliance with the ordinance the court was fixing rates. The premise is unsound. Neither our court nor the trial court attempted to fix past, present or future rates. The rates had been fixed by a duly constituted authority. A court does not exceed its authority in ordering compliance with the law. There is nothing in the law to prevent plaintiff from seeking a future change in rates, but until a change is authorized under the provisions of the utility Act it is the duty of plaintiff under our former decision to comply with the ordinances.

That part of the trial court's order directing the company to file the rates (under the ordinances) with the commerce commission was pursuant to statute and may have been unnecessary, but it was certainly not illegal. The rates under the ordinances were the only rates the company was authorized to charge.

As noted and quoted in Division VII, supra, section 4 of the utility Act directs the filing with the commission tariffs showing rates and charges and the rules and regulations under which services were rendered. The statute itself required such a filing. There is nothing illegal or in excess of jurisdiction in directing compliance with the law or in directing proper disclosure of the court's decree to the commerce commission.

The purpose of the order was not to influence the commission in the performance of its duty but to give the commission and the company the correct premise from which to proceed.

IX. The trial court directed the company to place the ordinance rates in effect as of March 24, 1964, and to refund excess charges collected to that date together with interest and sales tax.

As administrative details the court directed mailing of refund checks not later than June 1, 1964, the publishing of a list of undelivered checks and deposit of unclaimed funds with the clerk of the district court.

Plaintiff complains that the order was impossible of compliance in that it was required to mail refund checks by June 1, 1964, and on the same date publish a list of unclaimed checks.

We do not read the court's order as impossible of compliance. Only by delay to the last day could plaintiff create difficulty.

The court's order was dated March 24, 1964. It gave the company until June 1, 1964, to compute the individual refunds, write and mail the checks. This was a time allowance of 68 days. It is true that if the company waited until June 1 to begin compliance a list of undeliverable checks could not be published on the same day. The court's order, however, directed the mailing of checks *"not later than June 1, 1964,* the refund, interest and sales tax to be computed to March 24, 1964."* (Emphasis supplied) There is nothing in the record to indicate it was impossible to mail out the checks and determine the ones unclaimed well within the 68 days allowed. Incidentally, it might be noted that under the court's order the company had the use of its customers' money without interest from March 24 to the date the refunds were paid. The company may not logically complain about an impossibility created by its own delay.

There was nothing illegal, impossible or even unreasonable in the court's order. It merely provided administrative provisions to show compliance with the court's order.

X. Our opinion in the original appeal, 255 Iowa 1341, loc. cit. 1365, 124 N.W.2d 840, loc. cit. 855, said:

"We do not have in the record figures as to what amount shall now be repaid to the consumers. We can announce the principle on which such figures will be based. The actual figures will be computed on the basis of such principle by the trial court and will be filed in the case by such trial court in a supplemental opinion. The questions are only mathematical and cannot involve any fundamental differences."

Plaintiff now complains that the trial judge did not comply with the mandate of our court in that he did not personally compute the separate refunds due individual customers.

The trial court in comments from the bench suggested and

in its formal order said that "it is now the plain duty of this court and of all the litigants to halt the quibbling over minutiae of detail * * *." Plaintiff by construing our directive quoted above to mean that the judge should actually do the mathematical computation incident to each customer's refund is indulging in "minutiae of detail" never contemplated by our court. Our holding could not in reason be so construed. The plaintiff's business is a large operation involving thousands of separate customer accounts handled through an accounting department. Counsel for plaintiff at the time of the district court hearing estimated that it would require 20,000 checks in making refunds. The mathematical computation of the refunds is a job for plaintiff's accounting department.

As we said in our original opinion quoted at the beginning of this division "We do not have in the record figures as to what amount shall now be repaid to the consumers." Neither did the trial court except from information furnished by the plaintiff. The individual refunds could only be computed from plaintiff's records. If there should be a dispute as to the accuracy of the computation that question would be for the court to decide but it is not the duty of the court to personally take over plaintiff's accounting department. There is nothing illegal or in excess of jurisdiction in the court requiring plaintiff to furnish the detailed information necessary.

The trial court ordered plaintiff to file in the office of the clerk a statement showing names, the excess amount charged, with interest and sales tax, and the last known address of each consumer. This was an administrative detail not inconsistent with our mandate. It was neither illegal nor in excess of jurisdiction.

It is well settled that the district court after remand has no power or jurisdiction to do anything except to proceed in accordance with the mandate. See Glenn v. Chambers, 244 Iowa 750, 754, 755, 56 N.W.2d 892, and authorities quoted. In that case we quoted from 3 Am. Jur., Appeal and Error, section 1234, as follows: " '* * * the trial court, upon remittitur, has no power but to obey the judgment of the appellate court * * *.

Proceedings contrary to the mandate must be treated as null and void.' * * *."

The substance of this quotation, worded differently, now appears in 5 Am. Jur.2d, sections 991 and 992, from which we quote:

"It is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court * * *.

"On remand, the trial court may consider and decide any matters left open by the appellate court and is free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not presented or settled by such decision. * * * If the mandate speaks only in the light of the special facts found, the lower court is at liberty to proceed in all other respects in the manner that, according to its judgment, justice may require. * * *."

That is what happened here. We announced the principle on which the refund should be computed. The trial court directed plaintiff to compute and file the necessary information. The trial court ordered done what our remand required.

 "Certiorari does not lie to review mere irregularities or technical lack of compliance with law." Massey v. City Council, 239 Iowa 527, 535, 31 N.W.2d 875, and citations.

XI. The parties have argued many details and have approached the problem from varying premises requiring repetitious analysis, but the real issue is the impact of chapter 286, Laws of the Sixtieth General Assembly, upon the original rate case in district court, the appeal in our court, the supplemental hearing in district court and the present original action in certiorari. The answer is "none" except as hereinafter set forth.

This action in certiorari is a separate action and not a part of the action pending on July 4, 1963. See Division III, supra.

The litigation that was unaffected by the utility Act came to an end with the entry of the district court supplemental decree on March 24, 1964, from which there has been no appeal.

 Section 6 of the utility Act provides procedure for

a change in rates by appropriate filing with and procedure before the commerce commission. There is nothing in the statute nor in what we have held to prevent plaintiff from seeking a prospective change in rates by invoking the jurisdiction of the commission at anytime subsequent to March 24, 1964, and proceeding under section 6 of the Act.

Unless and until a change in rates becomes effective by procedure before the commerce commission under section 6 of the Act, and subsequent to March 24, 1964, the gas and electric rates fixed by city ordinances Nos. 2208 and 2209 must prevail and plaintiff is obligated to refund all charges made in excess thereof. We so held in the original rate case and that holding prevails. See Division I, supra.

In People ex rel. Board of Administration v. Peoria & P. U. Ry. Co., 273 Ill. 440, 446, 113 N.E. 68, 71, the Supreme Court of Illinois said:

"When a question of which a court has jurisdiction has been adjudicated by that court the adjudication is final, so far as the commission is concerned. Whether the determination of the circuit court was right or wrong, it must be accepted in this case as settling the rights of the parties. Until reversed by an appellate tribunal it is as final and conclusive as a judgment of this court and must be so treated."

XII. Because of the nature of an original action in certiorari some procedural problems appear. Rule 316, Rules of Civil Procedure, provides:

"Judgment limited. Unless otherwise specially provided by statute, the judgment on certiorari shall be limited to sustaining the proceedings below, or annulling the same wholly or in part, to the extent that they were illegal or in excess of jurisdiction, and prescribing the manner in which either party may proceed further, nor shall such judgment substitute a different or amended decree or order for that being reviewed."

Under this rule we may sustain or annul in whole or in part or modify but we cannot enlarge or substitute a new order for the one challenged.

The trial court ordered that ordinances Nos. 2208 and 2209 of Iowa City be placed in effect as of March 24, 1964; ordered

refunds computed to that date and be paid not later than June 1, 1964. The payment date having passed it is within our authority to modify this provision by extension. It is accordingly ordered that payment of the sums ordered paid by the trial court be made within 30 days from and after the issuance of procedendo herein.

XIII. On April 8, 1964, the chief justice of our court ordered issuance of a writ of certiorari and stayed proceedings conditioned upon plaintiff filing bond in the penal sum of $1,000,000. Bond was filed on April 15, 1964. We need not now anticipate that there will be any question about liability thereon. The extent to which there may be liability on the bond because of the collection of excessive gas and electric rates subsequent to March 24, 1964, and the failure to refund excessive charges for the period between July 4, 1963, and March 24, 1964, by June 1, 1964, cannot be determined in this certiorari proceeding. Hoskins v. Hotel Randolph Co., 206 Iowa 932, 938, 221 N.W. 442.

Except as modified in Division XII hereof the writ is annulled.

Plaintiff's printing costs are far in excess of what is permitted under our rules. As all costs herein are to be charged to plaintiff specific order relative thereof is unnecessary.—Writ annulled.

GARFIELD, C. J., and HAYS, PETERSON, THORNTON, MOORE and STUART, JJ., concur.

THOMPSON and LARSON, JJ., take no part.