**CITY OF DES MOINES, Iowa,**
**Petitioner-Appellant,**

v.

**CITY DEVELOPMENT BOARD,**
**Respondent-Appellee,**

Polk County, Iowa, Intervenor-Appellee.

No. 2–68531.

Court of Appeals of Iowa.

April 26, 1983.

James E. Nervig, Asst. City Atty., for petitioner-appellant.

Thomas J. Miller, Atty. Gen., and Lynn M. Walding, Asst. Atty. Gen., for respondent-appellee.

Thomas M. Werner, Asst. County Atty., for intervenor-appellee.

Heard by OXBERGER, C.J., and DONIELSON, SNELL, and SCHLEGEL, JJ.

DONIELSON, Judge.

Petitioner, City of Des Moines, Iowa, appeals from the district court judgment dismissing its petition for judicial review of the respondent City Development Board's decision denying the city's application for voluntary annexation pursuant to Iowa Code § 368.7 (1979). On appeal the city contends that the district court erred in holding that the respondent acted within the scope of its authority under section 368.7 in denying the proposed voluntary annexation within an urbanized area. We affirm.

Our scope of review is limited under Iowa Code §§ 368.22 and 17A.19–.20 (1979). Section 368.22 provides, in part, that

[t]he judicial review provisions of this section and chapter 17A shall be the exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of that agency action. The court's review on appeal of a decision is limited to questions relating to jurisdiction, regularity of proceedings, and whether the decision appealed from is arbitrary, unreasonable, or without substantial supporting evidence. The court may reverse and remand a decision of the board or a committee, with appropriate directions. The following portions of section 17A.19 are not applicable to this chapter:

1. The part of subsection 2 which relates to where proceedings for judicial review shall be instituted.

2. Subsection 5.

3. Subsection 8.

On appeal from the district court's ruling our review "is limited to the sole question of whether the district court correctly applied the law. To make this determination, we ask whether the agency action is supported by substantial evidence in the [whole] record [made] before the agency . . . ." *Iowa Civil Rights Commission v. Woodbury County Action Agency,* 304 N.W.2d 443, 446 (Iowa App.1981) (citations omitted). If a reasonable person would find the evidence adequate to reach a decision it is "substantial" for purposes of our review. *Id.* "If our conclusions are the same as the district court's, affirmance is in order; if not reversal may be required." *Id.*

### I.

On November 5, 1979, petitioner, the Des Moines City Council, received a petition from the New Hope United Methodist Church requesting voluntary annexation into the City of Des Moines property of the church located within three miles of the City of Urbandale at 4525 Beaver Avenue in Polk County. The City of Urbandale had a population of more than 15,000 people. The territory sought to be annexed totals approximately 4.75 acres and is contiguous to the City of Des Moines.

On February 5, 1980, the respondent, City Development Board, received an "application for approval of voluntary annexation within an urbanized area" from petitioner, City of Des Moines. On March 12, 1980, respondent development board received a notice from Urbandale that the Urbandale city council voted not to object to the proposed annexation of the property. On March 18, 1980, the chairman of the Polk County Board of Supervisors notified the respondent development board that Polk County objected to the proposed annexation of the property by the city since it created an isolated pocket of unincorporated land. On April 18, 1980, the City of Des Moines notified respondent development board and Polk County that the city would not provide essential services to isolated unincorporated areas within the corporate limits of the city.

On April 30, 1980, the respondent development board voted to deny the application for voluntary annexation pursuant to Iowa Code § 368.7 (1981). The respondent noted that the proposed annexation would result in an unincorporated territory which would be surrounded by the city and that no agreement had been reached between the city and the county concerning the provisions of services to the unincorporated area. The respondent development board indicated that it was more likely to disapprove future voluntary annexations to the city,

especially where "a potential conflict exists, where loss of services may occur, and where excessive costs are involved." The board concluded that the "proposed annexation would, in the opinion of the Board, generate conflict between the city of Des Moines and Polk County, and the residents of the unincorporated islands face a potential decrease in the provision of services." On this basis the proposed annexation was dismissed. On May 28, 1980, after hearing additional information from the city concerning the application, the respondent reaffirmed its earlier decision to deny the application.

On June 24, 1980, petitioner city filed its petition for judicial review of the respondent board's decision. The city asserted in part that the board acted in excess of its authority under Iowa Code Chapter 368 (1979) by dismissing the city's application for approval of voluntary annexation within an urbanized area. The city asserted that the board's authority to review such applications is set forth in section 368.7 and that "such section does not authorize the agency to dismiss applications based on the reasons stated by the agency." The city also stated that the respondent acted illegally in dismissing the application because the action was arbitrary, unreasonable and without substantial evidence. The board denied the allegations and Polk County filed a petition of intervention supporting the dismissal of the application.

On May 4, 1982, the trial court entered an order dismissing the petition for judicial review. The trial court concluded that the board did not act in excess of its statutory authority under chapter 368. The court found that the reasons for dismissing the petition came within the scope of section 368.16 which the court found applicable to voluntary annexations. Petitioner city then instituted this appeal.

## II.

This appeal concerns the scope of the city development board's authority under section 368.7 to deny a voluntary annexation of territory within the urbanized area of a city other than the city to which the annexation is directed. Section 368.7 governs two different types of voluntary annexation by petition, the only difference between the two types being whether the territory to be annexed is or is not within an urbanized area of a city other than the city to which the annexation is directed. An urbanized area is defined under section 368.1(12) as "the land area within three miles of the boundaries of a city of fifteen thousand or more population." Section 368.7 provides, in part, that

[a]n application for annexation of territory not within the urbanized area of a city, other than the city to which the annexation is directed must be approved by resolution of the council which receives the application. Upon receiving approval of the council, the city clerk shall file a copy of the resolution, map, and legal description of the territory involved with the state department of transportation. The city clerk shall also file a copy of the map and resolution with the county recorder, secretary of state, and the board. The annexation is completed upon acknowledgment by the board that it has received the map and resolution and a certification by the city clerk that copies of the map and resolution have been filed with the county recorder and secretary of state and that copies of the resolution, map, and legal description of the territory involved have been filed with the state department of transportation.

An application for annexation of territory within the urbanized area of a city other than the city to which the annexation is directed must be approved both by resolution of the council which receives the application and by the board. The annexation is completed when the board has filed copies of applicable portions of the proceedings as required by section 368.20, subsection 2.

Thus, the board's function in each proceeding is different. The board plays a very minor role when the territory to be annexed is not within an urbanized area of a city and when all of the owners of the land apply and the council of the city to which

the territory will be annexed approves the petition for annexation. The board's only function in this situation is to acknowledge that all necessary papers have been filed to complete the annexation procedure. However, when the territory to be annexed is within the urbanized area of a city other than the city to which the annexation must be directed, the board must also approve the application by resolution.

Petitioner-appellant argues that there are no standards set forth in section 368.7 to govern the board's direction to approve the latter type of voluntary annexation and, therefore, that if the board is given absolute, undefined discretion to deny voluntary annexation petitions, the statute would constitute an unlawful delegation of legislative power to the board. *See Elk Run Telephone Co. v. General Telephone Co.,* 160 N.W.2d 311, 315–17 (Iowa 1968); *Warren County v. Judges of Fifth Judicial District,* 243 N.W.2d 894, 898 (Iowa 1976) ("[a] legislative function may be delegated to another branch of government only if adequate guidelines for its exercise accompany the delegation."). The city argues that the power granted the board in section 368.7 is to act only as an impartial mediator in disputes between cities which may be competing for the annexation of the same territory. Under this interpretation, the city argues that the board's decision to deny the petition based on the reasons set forth in its dismissal order was beyond the power granted to them by the legislature. *See Iowa Department of Social Services v. Blair,* 294 N.W.2d 567, 569–70 (Iowa 1980) (administrative agencies have only such power as is "specifically conferred or necessarily implied from the statute creating them.")

In arguing that the board and the district court erred in applying, as standards, the substance of section 368.16, the city relies on a 1979 Attorney General's Opinion No. 79–7–17(L), Blumberg to Nail, Chairperson, City Development Board. 43 Op.Att'y.Gen. 282 (1979). In prior Attorney General's opinions it had been opined that the board had no power to disapprove a voluntary annexation of territory in an *un-urbanized*

area. 42 Op.Att'y.Gen. 721 (1978); 41 Op. Att'y.Gen. 347 (1975). The 1979 opinion is the only one which attempts to define the board's power under 368.7 to approve voluntary annexation of territory *within an urbanized area.* The letter specifically addresses the city development board chairperson's question regarding "which provisions, if any, within Division III of [Chapter 368] are applicable to [section] 368.7." After quoting the section in full, Assistant Attorney General Blumberg made the following analysis:

The problems that have occurred are in reference to the last paragraph of this section. Voluntary annexations, generally, are not a matter for the Board, even if the requirements of a common boundary have not been met. See, Opinion No. 78–10–11, Blumberg to Tyson, issued October 23, 1978. An exception to this is made by the last paragraph of § 368.7, which provides that voluntary annexations of territory within the urbanized area of another city must be approved by the Board in addition to the approval by the city council. Because the Board must approve such annexations, other cities, whose urbanized areas the territory is within, have maintained that the requirements of Division III, specifically § 368.-11, must be followed. That is, there must be a petition filed with the Board satisfying the requirements of § 368.11. It is unclear whether these cities also maintain that a hearing pursuant to § 368.15 must be held.

It is apparent from a reading of the chapter that there is a distinction between voluntary and involuntary annexations. Such a distinction has existed for some time. Solid reasons for such a distinction exist. When all the residents of a territory desire to be annexed to a city, and therefore make application for annexation, the need to have all available information regarding topography, services and the like is not great. Nor is a hearing to determine both sides of the issue necessary. Requiring a petition as set forth in § 368.11 for a voluntary an-

nexation within another city's urbanized area would render meaningless the distinction between voluntary and involuntary annexations.

Presumably, the intent of the Legislature in requiring approval by the Board of voluntary annexations within urbanized areas was to provide a check by an impartial body on competition between cities for certain territories. In addition, there is nothing within the Chapter which suggests that voluntary annexations within urbanized areas are to be treated the same as involuntary annexations. If a city, in whose urbanized area the territory is situated, wishes to object to the voluntary annexation it may appear before the Board to present its objections and the reasons therefor. Such a city is not prevented from discussing the annexation in relation to those things included within § 368.11. Section 368.22 provides for an appeal from a decision of the Board. Such an appeal is applicable to a decision on a voluntary annexation within an urbanized area. Subject to the limitations in § 368.22, an appeal would also lie pursuant to Chapter 17A.

As stated previously, applying the provisions of §§ 368.11, 368.12, 368.14, 368.15, 368.16, 368.17, 368.18 and 368.19 are unnecessary, and would thwart the legislative scheme of distinguishing between voluntary and involuntary annexations. Accordingly, we are of the opinion that the requirements in Division III for involuntary annexations with regard to the petition, appointment of the committee, public hearing, approval or disapproval by the committee, and the election are not applicable to voluntary annexations.

We note that, while they are given consideration, "opinions of the Attorney General are not binding on [the] court and it is our duty to make independent inquiry as to proper statutory interpretations." *Unification Church v. Clay Central School District,* 253 N.W.2d 579, 581 (Iowa 1977); *see also Wright v. Denato,* 178 N.W.2d 339, 342 (Iowa 1970); *Bernklau v. Bennett,* 162 N.W.2d 432, 436 (Iowa 1968). In *American Home Products v. Iowa State Board of Tax*

*Review,* 302 N.W.2d 140, 142–43 (Iowa 1981), the court noted the rules followed in construing statutory language as follows:

The purpose of all rules of statutory construction is to ascertain the intent of the enacting legislature. *Iowa National Industrial Loan Co. v. Iowa State Department of Revenue,* 224 N.W.2d 437, 439 (Iowa 1974). Some of the general rules of statutory construction that have been applied by this court are:

(1) In considering legislative enactments we should avoid strained, impractical or absurd results.

(2) Ordinarily, the usual and ordinary meaning is to be given the language used but the manifest intent of the legislature will prevail over the literal import of the words used.

(3) Where language is clear and plain, there is no room for construction.

(4) We should look to the object to be accomplished and the evils and mischiefs ought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.

(5) All parts of the enactment should be considered together and undue importance should not be given to any single or isolated portion.

(6) We give weight to the administrative interpretation of statutes, particularly when they are longstanding.

We do give consideration to the Attorney General opinion quoted above; if the situation were to arise in which different cities were competing for the annexation of certain territories, we believe the board would have to sit as an impartial mediator. But we do not believe, nor does the Attorney General opinion specifically state, that this is the *only* function of the board under section 368.7. The statutory language is not so limiting. The board is clearly directed to approve *all* such voluntary annexations.

The entire statutory scheme of chapter 368 demonstrates an intent to have the city development board oversee and approve or-

*derly* city development. The legislature treated voluntary annexations differently to encourage these arrangements by removing the more costly and involved procedures governing involuntary annexations. However, we believe the legislative intent was to provide the board with authority to review such voluntary annexation petitions when *any* existing or potential conflict arises regarding the territory to be annexed, not just when different cities are competing for annexation of the territory. We are aided in this interpretation by 220 Iowa Administrative Code 1.7 which was intended to implement section 368.7. That rule provides that "[t]he board in its deliberations may take note of public documents or other evidence and *shall give any interested party an opportunity to comment* on any evidence taken note of either orally or in writing as the board so specifies." (Emphasis added.) The rule contemplates that an interested party, such as the intervenor in the instant case, would have an opportunity to review the petition and to make comments which may, or may not, influence the decision of the board. We believe this was intended to give all interested parties a chance to pose their objections to the annexation before the board considers the petition. We believe the board has the power to consider the record before it and either approve or disapprove the petition. *See Quaker Oats Co. v. Cedar Rapids Human Rights Commission*, 268 N.W.2d 862, 868 (administrative agency has all powers conferred or necessarily implied from statute creating it.) We thus need only consider whether there are sufficient standards to govern the board's determination in this regard. The following principles govern our search for standards:

Standards may be found in statutes *in pari materia* with the one under challenge. Standards may be general or specific. Where they are specific a statute is less subject to challenge.

Safeguards are an important factor and may suffice even in the absence of detailed standards. But standards remain important. They may themselves constitute a safeguard. It is desirable, but not essential, to have both safeguards and standards; in some cases either will suffice. Standards are of more importance where the safeguards are in some way lacking.

We look to the practical necessities of public interest and will consider as an important factor the difficulty or impossibility of calling for the legislature to function in a given area.

*Warren County v. Judges of the Fifth Judicial District*, 243 N.W.2d 894, 901 (Iowa 1976); *see also Elk Run*, 160 N.W.2d at 315–17.

The city argues that it was improper for the board to rely on the reasons stated in its order dismissing the petition. The reasons stated by the board included the fact that the Polk County Board of Supervisors objected to the annexation because the city would not agree to provide "essential services of police and fire protection to those areas which have been left as isolated islands of unincorporated territory." The court held that such considerations were appropriate under section 368.16 and that the board's action was appropriate under that section. Section 368.16 provides in pertinent part as follows:

368.16 Approval of proposal. Subject to section 368.17, the committee shall approve any proposal which it finds to be in the public interest. A committee shall base its finding upon all relevant information before the committee, including but not limited to the following:

\* \* \* \* \* \*

5. Cost and adequacy of existing services and facilities.

6. Potential effect of the proposal and of possible alternative proposals on the cost and adequacy of services and facilities.

\* \* \* \* \* \*

Additionally, section 368.17 provides that the committee may not approve "[a]n annexation unless the territory is adjoining the city to which it will be annexed, and the committee finds that the city will be able to provide to the territory substantial munici-

pal services and benefits not previously enjoyed by such territory, and that the motive for annexation is not solely to increase revenues to the city."

We agree with the city that the sections are not *specifically* applicable to the voluntary annexation procedures of section 368.7. The board is not the same entity as the 'committee' described in section 368.16. *See* 42 Op.Iowa Att'y.Gen. 721. However, this conclusion does not mean that the sections in division III are not persuasive on the interpretation of section 368.7. We believe that sections 368.12, .16 and .17 apply to section 368.7 to the extent that they provide us with insight into the legislative intent in creating the board, and an understanding of the general issues involved in annexation matters. Among these issues are those relating to essential services and the assurance that such services will be secured to the area being considered for annexation. Section 368.16 specifically requires the board to consider the "public interest." Taken together, the sections in Division III establish *general* standards sufficient to guide the board in approving or disapproving an application for the voluntary annexation of territory within the urbanized area other than the city to which the annexation is directed. We believe that if this type of voluntary annexation is sought and competing cities require the board to act as mediator, these same general standards would be applied: the board would have to determine which competing city would provide essential services to the annexed territory and which petition would be in the best public interest. The city acknowledges the board's power to act in this mediator capacity. We see no distinction between this situation and one in which the board must act in approving or disapproving petitions where there are objections and where there is a potentially detrimental effect on the public interest. The detailed procedural safeguards set forth in chapter 368 ensure that the rights of all interested parties will be protected. Accordingly, we believe that the board acted within the authority granted in disapproving the voluntary annexation petition in the instant case.

AFFIRMED.