**CITY OF WAUKEE, Iowa, A Municipality, Appellee,**

v.

**CITY DEVELOPMENT BOARD, Appellant,**

**City of Clive, Iowa, Intervenor–Appellant.**

**No. 92–886.**

Supreme Court of Iowa.

March 23, 1994.

James C. Wine of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellant City of Clive.

Bonnie J. Campbell, Atty. Gen., and Christie J. Scase, Asst. Atty. Gen., for appellant City Development Bd.

Paul E. Huscher and Paul R. Huscher, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

SNELL, Justice.

I. Introduction

This dispute stems from the competing annexation applications of two cities, the City of Clive (Clive), and the City of Waukee (Waukee), for territory located in Dallas County. Appellee, Waukee, petitioned the Dallas County District Court for judicial review of appellant City Development Board's (CDB) failure to approve its voluntary annexation application within the time period required pursuant to Iowa Code section 368.7 (Supp.1991).

The district court remanded Waukee's application to the CDB and ordered the board to approve it. The CDB and Clive raise two issues on appeal. First, whether the doctrine of exhaustion of administrative remedies barred the district court's exercise of appellate jurisdiction over this matter. Second, whether the district court exceeded its jurisdiction in ordering the CDB to approve Waukee's voluntary application.

II. Standard of Review

■ Our scope of review in this case is limited by Iowa Code sections 17A.19, 17A.20, and 368.22 (1991). Section 368.22 provides:

A city ... may appeal a decision of the board ... to the district court of a county which contains a portion of any city or territory involved.

. . . .

... The judicial review provisions of this section and of chapter 17A shall be the exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek ·judicial review of that agency action. The court's review on appeal of a decision is limited to questions relating to jurisdiction, regularity of proceedings, and whether the decision appealed from is arbitrary, unreasonable, or without substantial supporting evidence. The court may reverse and remand a decision of the board ... with appropriate directions. The following portions of section 17A.19 are not applicable to this chapter:

. . .

3. Subsection 8.

Iowa Code § 368.22. We strictly construe statutes delineating a court's appellate jurisdiction with regard to administrative appeals. See Morrison v. Century Eng'g, 434 N.W.2d 874, 876 (Iowa 1989); Abel v. Iowa Dep't of Personnel, 472 N.W.2d 281, 282 (Iowa 1991). Thus, our review is limited to "questions relating to jurisdiction, regularity of proceedings, and whether the decision appealed from is arbitrary, unreasonable, or without substantial supporting evidence." Iowa Code § 368.22.

III. History of Case

Clive and Waukee filed applications to annex certain territory located within Dallas County, Iowa. Clive filed an "involuntary application." Involuntary annexation applications are those filed without the support of all landowners in the territory to be annexed. See Iowa Code § 368.11 (Supp.1991). Waukee filed voluntary applications. Voluntary applications are those filed by all the landowners in the subject territory. See id. § 368.7. Waukee filed its voluntary applications between April 25, 1990 and May 8, 1990.

Waukee's voluntary applications were still pending before the board in November 1990. On November 8, 1990 Waukee sought a writ of mandamus from the Dallas County District Court directing the CDB to approve Waukee's voluntary annexation applications. The district court denied that writ. Waukee then filed a petition for judicial review of

agency action with the district court. These events occurred on or before June 10, 1991.

On June 10, 1991, the Iowa legislature amended various provisions of Iowa Code chapter 368. 1991 Iowa Acts ch. 250 (hereinafter referred to as "Senate File 4"). Senate File 4, in relevant part, provided the following:

> Sec. 2. NEW SECTION. 368.6 INTENT.
>
> It is the intent of the general assembly to provide an annexation approval procedure which gives due consideration to the wishes of the residents of territory to be annexed, and to the interests of the residents of all territories affected by an annexation. The general assembly presumes that a voluntary annexation of territory more closely reflects the wishes of the residents of territory to be annexed, and, therefore, intends that the annexation approval procedure include a presumption of validity for voluntary annexation approval.
>
> . . . .
>
> Sec. 4. Section 368.7, Code 1991, is amended by adding the following new unnumbered paragraph:
>
> *New Unnumbered Paragraph.* If one or more applications for a voluntary annexation and one or more petitions for an involuntary annexation for a common territory are submitted to the board within thirty days of each other, the board shall approve the application for voluntary annexation, provided that the application meets the applicable requirements of this chapter, unless the board determines by a preponderance of the evidence that the application was filed in bad faith, or that the application as filed is contrary to the best interests of the citizens of the urbanized area, or that the applicant cannot within a reasonable period of time meet its obligation to provide services to the territory to be annexed sufficient to meet the needs of the territory. . . . The decision of the board under this paragraph shall be made within ninety days of receipt of the application by the board. The failure of the board to approve an application under this paragraph shall be deemed final

agency action subject to judicial review. . . . Judicial review of a board decision under this paragraph shall be limited to review of the testimony and documents presented to the board prior to issuing its decision on the application for voluntary annexation.

*Id.* §§ 2, 4.

Senate File 4 also changed the composition of the CDB from a three to a five member board. *Id.* § 5. Moreover, the legislature provided for the retroactive application of the amendment to applications pending before the CDB on or after April 1, 1991. *Id.* § 11(2). Waukee viewed Senate File 4's enactment as a direct legislative mandate aimed at the CDB compelling the board to approve Waukee's pending voluntary annexation application. Relying on its belief, Waukee dismissed its petition for judicial review pending before the Dallas County District Court without prejudice.

On October 4, 1991, Waukee again filed a petition for judicial review of agency action with the district court. Waukee's petition alleged the CDB failed to approve its voluntary annexation application within the ninety-day statutory period provided by Senate File 4. *Id.* § 4. The district court exercised jurisdiction over the matter pursuant to the judicial review provisions of Senate File 4, section 4. *Id.*

The district court held Waukee exhausted its administrative remedies under chapter 368. The district court premised its holding on the legal conclusion that the ninety-day decision making requirement of Senate File 4 prescribed a mandatory obligation. It further concluded the ninety-day period was to be calculated from July 5, 1991—the date the CDB itself "remanded" the applications to the "new" five member board for consideration. The district court held that under Senate File 4, section 4, the CDB's failure to approve Waukee's voluntary application by October 4, 1991, by which time the ninety days, calculated from July 5, 1991, had expired, constituted final agency action subject to judicial review.

Moreover, the district court believed that merely remanding the case to the board was

an inadequate remedy for Waukee. The district court held the CDB abused its discretion by failing to approve Waukee's voluntary applications. Pursuant to Iowa Code section 17A.19(8), the district court remanded the case to the CDB "for the sole purpose of granting [Waukee's] applications for annexation."

IV. Discussion of Law

A. Exhaustion of Administrative Remedies.

Iowa Code section 17A.19(1) provides that "[a] person or party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any final agency action is entitled to judicial review thereof under this chapter."

The doctrine of exhaustion of administrative remedies applies " 'where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course.' " *Rowen v. LeMars Mut. Ins. Co.*, 230 N.W.2d 905, 909 (Iowa 1975) (quoting *United States v. Western Pac. R.R.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126, 132 (1956)). The exhaustion question in this case is whether the administrative process established by chapter 368 ran its course before the district court exercised jurisdiction over the matter. The determination of this question requires the resolution of two subissues. First, we must determine the effect of Senate File 4's requirement that a decision be made by the CDB within ninety days. Second, we must determine when the CDB legally received Waukee's voluntary annexation application in the context of the compositional changes made to the CDB pursuant to Senate File 4.

■ 1. *Effect of Statutory Language.* Regarding the first subissue, the parties have framed competing arguments emanating from an analysis of whether the language in Senate File 4 is mandatory or directory. Waukee claims the CDB had to act on its voluntary petition within ninety days; Clive and the board say it was discretionary. Mandatory and directory statutes each impose duties. The distinction between the two types of statutes lies in the consequences of a party's failure to perform the duty. *Taylor*

*v. Dep't of Transp.*, 260 N.W.2d 521, 522 (Iowa 1977). In *Taylor* we said:

> The mandatory-directory dichotomy does not refer to whether a statutory duty is obligatory or permissive but instead relates to whether the failure to perform an admitted duty will have the effect of invalidating the governmental action which the requirement affects.

*Id.* Later, we followed this doctrine in holding that a court's power to act on a forfeiture application was not barred by the State's failure to hold a hearing within the statutory thirty-day period. *In re Sopoci*, 467 N.W.2d 799, 800 (Iowa 1991). The court's order approving the forfeiture of property was affirmed. *Id.*

■ In the case at bar, the CDB failed to take any action on Waukee's voluntary annexation petitions. We are thus reviewing an agency's nonaction. For this reason, the mandatory-directory analysis is inapposite.

■ Nevertheless, we can discern the result of Senate File 4's addition to the law by construing the statute itself. In doing so, we may consider the prior state of the law, other circumstances surrounding the statute's enactment, statements of public policy found within the act, and the entire text of the enactment. *City of Des Moines v. Public Employment Relations Bd.*, 275 N.W.2d 753, 760 (Iowa 1979). We examine statutory amendments "with an eye toward determining the legislative design which motivated the change." *Jenney v. Iowa Dist. Court*, 456 N.W.2d 921, 923 (Iowa 1990).

Prior to Senate File 4's enactment, our courts recognized a distinction between voluntary and involuntary annexations. *See City of Des Moines v. City Development Bd.*, 473 N.W.2d 197, 200 (Iowa 1991) [hereinafter *City of Des Moines II* ]; *City of Des Moines v. City Development Bd.*, 335 N.W.2d 449, 452–54 (Iowa App.1983) [hereinafter *City of Des Moines I* ]. We held that Iowa Code section 368.7's main objective was to remove from the voluntary annexation process "the more costly and involved procedures governing involuntary annexations." *City of Des Moines II*, 473 N.W.2d at 200. Senate File 4 can only be viewed as an attempt to further

88

reduce the number of bureaucratic hurdles involved in the voluntary annexation process.

The legislature limited the amount of time the CDB can spend on processing voluntary applications to ninety days. 1991 Iowa Acts ch. 250, § 4. Inherent in this provision is a legislative desire for expediency in the voluntary annexation process. We further note that the legislature passed Senate File 4 on June 10, 1991—in the heat of the Waukee–Clive annexation battle over the CDB's delay regarding Waukee's voluntary application. Our analysis leads us to conclude and we hold that Senate File 4 commanded that a decision be made by the CDB within the ninety-day period.

■ 2. *Calculating the Ninety–Day Period for the CDB to Act.* Waukee filed its voluntary applications with the CDB between April 25, 1990 and May 8, 1990. Governor Branstad signed Senate File 4 into law on June 10, 1991. Senate File 4 carried with it the following transition provision:

> Any voluntary application or involuntary city development petition which is pending before the board or a committee of the board on or after April 1, 1991, shall be remanded to the board for action under chapter 368 as amended by this Act.

1991 Iowa Acts ch. 250, § 11(2).

Based on this "remand" provision, the CDB and Clive contend it was impossible for the CDB to legally act after Senate File 4's enactment. They claim there are three possible dates upon which the CDB should be held to have received Waukee's voluntary application. Under each date suggested by the CDB as the legal date of receipt, the Senate File 4 ninety-day period for making a decision would not have expired by the time Waukee filed its second petition for judicial review on October 4, 1991.

Waukee contends the board received the applications on June 10, 1991—Senate File 4's enactment date. Waukee contends Senate File 4's remand provision was self-executing. According to Waukee, there was never

any lapse in the board's authority to act. Therefore, according to Waukee, the board's failure to act on its application by September 8, 1991 constituted final agency action. Waukee filed its petition for judicial review on October 4, 1991.

"[B]odies charged with the performance of public duties continue to function though a vacancy exists." *Levinson v. Connecticut Bd. of Chiropractic Examiners,* 560 A.2d 403, 418 (Conn.1989); *see generally* 73 C.J.S. *Public Administrative Law and Procedure* § 8, at 367 (1983). Boards may act "as long as there exists a quorum equal to a majority of all the actual members of the board." *Levinson,* 560 A.2d at 418; *cf. Serian v. State ex rel. Bd. of Optometry,* 171 W.Va. 114, 297 S.E.2d 889, 893 (1982).

■ On the other hand, administrative bodies possess only such power as is specifically conferred or necessarily implied from the statute creating them. *Iowa Dep't of Social Servs. v. Blair,* 294 N.W.2d 567, 569–70 (Iowa 1980). The court cannot expand an agency's authority beyond the parameters set by the legislature. *Id.* at 570.

We do not believe the legislature intended to temporarily withdraw the CDB's authority to act when it enacted Senate File 4. The district court's analysis is particularly cogent on this issue:

> [T]he legislation, which altered the size of the Respondent board from three members to five members, neither created a new Board nor reactivated the former Board. Although Respondent argues that it could not act until July 17, 1991, it did, in fact, act when it scheduled hearings, addressed the letters of remand, and conducted ministerial functions. The Transition paragraph of Senate File 4, Section 11 permitted the three members of the Board to continue to serve their unexpired terms of office. As there was a quorum, a majority of the Board members, present during the June and July meetings, Respondent would have legally been able to act upon the applications. Iowa Administrative

Rule 263–1.5(368); Iowa Code Section 368.9.

If the legislature intended to suspend the CDB's authority to act until the appointment of two new members, it could have clearly stated so. It did not. We hold the board legally received Waukee's application on June 10, 1991. The CDB had until September 8, 1991 to act on Waukee's voluntary annexation application. Waukee waited until October 4, 1991 to file its petition for judicial review.

We hold Waukee exhausted the administrative remedies available to it under Senate File 4. According to Senate File 4, the board's failure to approve a voluntary application pursuant to section 4's provisions "shall be deemed final agency action subject to judicial review." 1991 Iowa Acts ch. 250 § 4.

### B. Judicial Review of Agency Inaction/Insufficiency of Agency Record for Judicial Review.

Where the issue on judicial review involves the board's failure to approve a voluntary application, the court is reviewing agency inaction. Under the Iowa Administrative Procedure Act, the term "agency action" includes a decision not to act or the failure to act or perform a duty. Iowa Code § 17A.2(9). Unfortunately, an agency's failure to act or refusal to act will often be attended by an absence of formal agency factual findings and legal conclusions. We are further constricted by a provision in Senate File 4 limiting judicial review of board decisions to "testimony and documents presented to the board prior to issuing its decision on the application for voluntary annexation." 1991 Iowa Acts ch. 250, § 4.

We explained the critical importance of formal, recorded agency findings to the process of judicial review of agency action in Ward v. Iowa Department of Transportation, 304 N.W.2d 236, 238 (Iowa 1981), and Johnston v. Iowa Real Estate Commission, 344 N.W.2d 236, 239 (Iowa 1984). "Meaningful appellate review is impossible in the absence of reasoned findings of fact." Catalfo

v. Firestone Tire & Rubber Co., 213 N.W.2d 506, 510 (Iowa 1973). It is only in rare cases where "an agency's unexpressed reasoning [will] appear by ineluctable implication from the record." Johnston, 344 N.W.2d at 240.

### C. Relief Granted by District Court.

■ Iowa Code section 368.22 allows a court to "reverse and remand a decision of the board ... with appropriate directions." Iowa Code § 368.22. Section 368.22 replaced section 17A.19(8) giving the court power to "reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory relief...." See id. §§ 17A.19(8), 368.22(3).

The district court ordered what it characterized as equitable relief in this case. It held the board's failure to act left Waukee without a remedy. It remanded the case and ordered the CDB to approve Waukee's voluntary application.

The CDB claims the court exceeded its jurisdiction by ordering such relief. It contends that in ordering equitable relief the court improperly reached the merits of the controversy—exercising original rather than appellate jurisdiction in this matter. Waukee contends the district court was compelled as a matter of law to order the relief it did. See Johnston, 344 N.W.2d at 240. Waukee argues that under Senate File 4 voluntary annexation applications must be approved by the board unless one of three findings enumerated by Senate File 4 are made. Because there is no dispute that the CDB failed to make those findings, Waukee argues the applications must be approved as a matter of law. See id.

However, we believe the legislature stopped short of creating a self-executing voluntary annexation application approval process. Senate File 4 does not state that the failure of the board to approve a voluntary application shall result in the automatic approval of the application. See 1991 Iowa Acts ch. 250, § 4. The decision to approve or deny an application must still come from the board. Id. ("The board shall approve the

application for voluntary annexation....")
(emphasis added).

In addition, we believe the doctrine of primary jurisdiction compels us to leave the resolution of the merits of this controversy to the CDB. *See Rowen,* 230 N.W.2d at 909. The legislature, in enacting chapter 368, placed questions involving the annexation of land within the special competence of the CDB. *See id.;* Iowa Code ch. 368.

We believe the legislature intended to insure that in appeals from chapter 368 cases appellate courts do not originally determine the merits of the controversies before them. Reviewing courts are granted the power to reverse and remand "with appropriate directions." Iowa Code § 368.22. Our directions on remand are binding on lower tribunals. *See Kuhlmann v. Persinger,* 261 Iowa 461, 468, 154 N.W.2d 860, 864 (1967); *Iowa–Illinois Gas & Elec. Co. v. Gaffney,* 256 Iowa 1029, 1040, 129 N.W.2d 832, 838 (1964).

Accordingly, we remand this case to the CDB for further action. On remand, the CDB must either approve or deny Waukee's application. It is clear the legislature envisioned the voluntary annexation process to take no longer than ninety days to complete. *See* 1991 Iowa Acts ch. 250, § 4. That time period elapsed nearly two-and-a-half years ago. Therefore, to ensure a closure of this matter we direct the CDB to make a decision on Waukee's application within sixty days of the date of this order.

**AFFIRMED IN PART, REVERSED IN PART, REMANDED TO CITY DEVELOPMENT BOARD WITH DIRECTIONS.**